24, 585 and 24, 895 Banks v. McGlynn, Hays & Co., Inc. 24, 585 and 24, 895 Banks v. McGlynn, Hays & Co., Inc. Good morning, Your Honors. May it please the Court, my name is Lori Morrison and I represent the Plaintiff Appellant, Edward Banks. This is a textbook case of a district court dismissing an employment civil rights case on summary judgment. Despite defendant's admissions and the evidentiary record establishing defendant's harassment, hostile work environment, retaliation and discrimination as a matter of law, and despite numerous disputes of fact undermining the defenses, I will start first with defendant's hostile work environment and harassment. There is no dispute that defendant, Saro Daniacuo, called Banks the N-word on at least two occasions. Your Honors, we'll see that in Plaintiff's Brief, page 14 through 17 of 105. Over what period of time? Throughout his employment. You said there were two, when did they occur? Your Honor, there were at least two, and they occurred at, and they occurred, they occurred, the first one occurred within six months, I believe, six months to ten months of his firing, and the other one occurred later. After his fire? No, no, no, after the first one. I can show you, Your Honors. If what, Your Honor. Are you talking about the district court called the Carr comment, or? I'm sorry, I can't hear you. Is this the Carr comment that you're referring to right now? Yes, Your Honor, the N-Carr, the thank you, my N. Well, I thought that one was. I'm sorry, the N-Carr comment. Yes, Your Honor. I thought the first, I thought the thank you, the first one was, the text message was, there was an issue as to whether it was a discriminatory, whether the interpretation was actually what you just said, or whether it was a typo on the text. Actually, Your Honor, that is what the district court opinion stated, but that is not supported by the evidentiary record. In terms of the thank you, my N text, Don Iacuo first denied that the N meant the N-word, but then he then admitted that it did mean the N-word. I can cite that for Your Honors. Yes, that is on Don Iacuo's testimony stating, and quote, I agree that I said one by accident in a silly text, and one actually did say, which I got reprimanded for. That's Don Iacuo, transcript 241 colon 23 through 242 colon 10 at A, 241 and 242 of plaintiff's appendix. And, of course, so you said, Eddie, this is the N-Carr, right? I did say that. Okay, so he absolutely first denied it, but then admitted that he said it on at least two occasions. So we have these two comments you have presented to us, and he worked, your client worked, I think, for two years. Is that right? A little. He worked from August 2016 to February 2018. So a little more than two years. So in support of your hostile working client, Robert Klain, what else do you have other than those two comments? Absolutely, Your Honor. Again, that is what was admitted by Don Iacuo. Don Iacuo also, there's a dispute of fact with respect to him calling the plaintiff rigor, meaning the N-word. That is a dispute of fact. What admissible testimony would, I mean, I was a little surprised not to see a declaration from the plaintiff indicating that. I think we just have the attorney complaint which recounts it. So what non-hearsay basis would there be at trial if it were to go forward to get in front of the jury that that comment was actually made? Sure, Your Honor. It is A, in the complaint. B, Well, the complaint wouldn't get it to the jury. Of course, Your Honor. But also B, what the court relied on is that is the claim of defendants that somehow everyone was a rigor. Sullivan testified, which would make Don Iacuo calling him a rigor be related to rigor and not the N-word. Sullivan testified that Banks was not known as being a rigor. Sullivan testified to that on A, you'll see it on A-207 through A-208. So calling him a rigor absolutely did not comport with his job duties whatsoever. I'm just trying to think through. If we were to vacate a remand and you go forward to trial, what evidence could you put on that your client was called a rigor and his understanding, going to the subjective component, his understanding of the meaning of that? Oh, sure. Your Honor, the plaintiff testified to this. It just wasn't put before in terms of summary judgment because we didn't want to run into the issue of genuine disputes of fact because we were trying to prove our case on summary judgment. But the plaintiff does state in his testimony 100% that he was called rigor, meaning the N-word. And there is testimony by Banks from that. But in response to the summary judgment motion, would you agree there's not admissible trial testimony that it occurred? Well, Your Honor, on summary, you mean the, I'm not understanding, you mean the plaintiff's testimony? On the summary judgment record, is there admissible testimony that Mr. Banks was called a rigor? Well, there is admissible testimony that that plaintiff complained about rigor meant the N-word. Don Iacquo even admits that. The defendants admit that. That's in the counsel. Absolutely, Your Honor. Absolutely. So that at worst is, at the very least, is a dispute of fact. We also have Robinson calling plaintiffs a piece of SHIT. Carlucci testified to that. We have the Black Music comments. So either way, Your Honors, we have enough here where a reasonable jury could find a hostile work environment. It's also important to note with respect to hostile work environment that the court cited two and a half pages in their opinion, citing where hostile work environment wasn't found. In not one of these cases cited by the district court was the N-word alleged to have been uttered even one time. Never mind repeatedly. Sure. To get back to the question I was asking before, so we have these two comments over a period of just short of two years. What else do you have? Like we said, Your Honor, we have two. Oh, I'm sorry, Your Honor. For hostile work environment. Sure. We also have saying the plaintiff was playing the race card. That is specific straight to his race and straight to going to defendants, discriminatory, animus. How does that comment establish a hostile work environment? It's establishing the mindset of the defendants, including Carlucci. Also establishing the mindset, Your Honor, that's my, if I may complete the answer. Mindset is not a component of a hostile work environment claim. Well, then I can do this, Your Honor. How about the fact that Carlucci also claimed that somehow plaintiff was fired because he was so dangerous and aggressive, even though he stated that in his affirmation to the summary judgment on paragraph 16, despite his previous testimony that the plaintiff was not violent. Carlucci hired him, right? Correct. He hired him, and he was the ultimate decision maker. Once Mr. Banks showed up, he turned into a racist. Is that what happened? No, Your Honor. It's very clear, and even Carlucci states that there was an intervening circumstance, where after plaintiff complained about being called the N-word, he quoted a downward spiral, and Carlucci, who is the ultimate decision maker with respect to the adverse actions, stated that he could not state why somehow the same behaviors that plaintiff did for a year with impunity somehow were a downward spiral and were suddenly terrible. We have that where Carlucci even testifies that he's doing a hypothetical about beer because he cannot state specifically how somehow plaintiff's same behaviors for a year suddenly became so egregious that he had to somehow be fired. Didn't Carlucci discipline Donaco after the car comment? Your Honor, that's what they claim, but at best, Donaco got a slap on the wrist. This further goes towards showing discrimination. Donaco got a slap on the wrist, even though defendants knew that he said the N-word at least twice. But plaintiff was fired for complaining about it. Robinson, again, going toward the discrimination claim that a reasonable jury could find. Robinson, Carlucci testified on January 30th, was just as bad as plaintiff, and Carlucci testified that neither plaintiff nor Robinson did anything on that date, including the diabetic pee comment. There was nothing that happened, Carlucci testified, that Banks or anyone should have been disciplined for. Yet Banks was fired, Robinson was not disciplined in any way, Donaco was given a slap on the wrist. That absolutely shows discriminatory animus and disparate treatment between Banks, the black man, and the other people who are not. The court stating that somehow there's no allegation of any disparate treatment or any pretext or otherwise is just not supported by the record. And again, your honors, if we note, Carlucci has a changing, he constantly is changing the reasons why Banks was somehow disciplined and fired. This is the embodiment of pretext as shown specifically in the Reeves case in the United States Supreme Court. First, Carlucci claims that Banks wasn't fired at all. He claims that he just didn't show up the next day after January 30th. That was absolutely discredited by the fact that Banks didn't show up because Carlucci and Crincoli, who's the HR person, told him not to show up for work. So those two examples of why solely plaintiff was fired, totally gone. So then defendant Carlucci comes up with another... The district court concluded that defendants have presented unrebutted evidence, this is in the district court's words, that Banks slept on the job, was not where he needed to be during work hours, and was involved in a near physical altercation with a co-worker that he called a diabetic. Is that, in your view, are those conclusions incorrect? Not reported in the record? Carlucci directly discredits all of those claims. First with respect to, first of all, Carlucci is undisputed that Carlucci was the ultimate decision maker. His testimony with respect to performance is not cited anywhere in the opinion. Secondly, with respect to sleeping on the job, Joanne Thomas was not a decision maker, and even she states, quote, she did not hear anything about Banks receiving any disciplinary action for it. Your Honest will find that on A-20 and on A-285. In fact, there's testimony to show that Carlucci, that people slept routinely during their breaks. And that Carlucci gave Banks a blanket to sleep because it was during his break. Further, the dangerous conditions that the district court cites. Carlucci states the entire incident was of no importance to him. He states, I have no idea and I couldn't care less. That's A-196. Then we have not knowing somehow where Banks was. This is not shown either. Carlucci testified that other shop and field staff members did the same thing with impunity. He states that on A-169 through 170. Further states Carlucci that there's no indication that Banks was disciplined in any way, much less being suspended or fired for somehow taking breaks and for defendants not knowing where he is purportedly. So- You're over your time. Thank you. Do you want to use your rebuttal now or? No, I'll come back.  We'll hear from that. Thank you. Good morning. My name is Edward Weissman. I represent the defendants-appellees. If everything Ms. Morrison said was true, you still would not have valid claims for discrimination, for retaliation, or for a hostile work environment. First of all, when given an opportunity to respond to anywhere from eight to ten instances of Mr. Banks not following proper protocol, we hear nothing on the underlying summary judgment motion from Mr. Banks. There was a two-page affidavit from Mr. Banks, and the two pages dealt with the Family Medical Leave Act, which had nothing to do with this case. It had been dismissed by Judge Otten, and it makes no reference whatsoever to discrimination, retaliation. It was just, let's put something from Edward Banks in front of the court, but not anything that responds to what is relevant on this motion. What Mr. Banks did is he outsourced everything to his attorney. His attorney has no personal or direct knowledge of the facts. Judge Chin of this court, while in the district court, stated that in opposing a motion for summary judgment, a hearsay submission from an attorney who has no personal or direct knowledge is not legally sufficient. That's what we have here. Mr. Banks... Counsel, could I ask you, because we didn't hear from your opposing counsel, on the retaliation claim? Just to focus on the retaliation claim for a moment. We've got Mr. Banks' complaints of racial discrimination in fall of 2017, and then ultimately terminated January 2018. We've got, I think, temporal proximity, at least as a step in McDonnell-Douglas. Then we've got the reasons given for the non-protextual motivations. Just thinking about those in the retaliation context, I think there are a couple categories of non-pretext reasons. We've got deficiencies in job performance, right? Yes. Sleeping on the job and not being where he's supposed to be and the like. But then there's testimony from Carlucci, I believe, that he couldn't care less about some of these, which seems to undermine the importance of the alleged deficiencies. That's one category. There's the physical altercation with Carlucci and Robinson. And again, Mr. Carlucci, I think, there's testimony that suggests that this wasn't significant. He said, I didn't get involved, I didn't care. We've got the third category, I think, which is the accusation that Mr. Banks falsely accused Mr. Robinson of calling him an N-word. Again, that sort of seems disputed as to whether Mr. Banks ever claimed that Mr. Robinson called him the N-word. And then I think the fourth category is the reporting issue, the surreptitious recording of the conversation and opposing counsel's argument with regard to that is that that wasn't found out until after termination, so it couldn't be a non-pretextual reason. It just does seem, at least for retaliation, we've got temporal proximity and then we've got the non-pretextual reasons argued, which I think, tell me why you disagree, there appears to be factual dispute with respect to those. Judge, the letter from Ms. Morrison, I believe, was sent October 5, 2017. Mr. Banks was fired four months later. So the causal relationship between the letter and the firing was there were two intervening events. Mr. Carlucci asked Mr. Banks if he would put air in his company car. Mr. Carlucci is a senior citizen and he asked people in the shop, please do this for me. Mr. Banks became angry and told him he would not do it and said it in front of everyone in the shop. In late January of 2018, the date of the episode, Mr. Banks challenged Mr. Robinson to a fight and when Mr. Robinson would not take him up on it, he referred to Mr. Robinson as a diabetic pussy. That occurred on January 30, 2018. Then he saw Mr. Carlucci and he had words with Mr. Carlucci and he challenged Mr. Carlucci to a fight. Now, where I come from, you don't challenge the president of the company to a fight and not effectively quit. Mr. Carlucci did the right thing. Mr. Carlucci sent him and Mr. Robinson home and he thought about it and determined that these multiple situations over an 18-month period is far, far too much. What counsel left out is despite the shortcomings of Mr. Banks, Mr. Carlucci asked others, Chris Sullivan and Mr. Robinson to work with him, try to improve his skills. It had gotten to the point where customers were complaining about the poor work product put out by Mr. Banks and even McGlynn employees in the field did not want Mr. Banks working on their projects because his product was not good. This has nothing to do with discrimination. This has nothing to do with retaliation or hostile work environment. These are a string of isolated incidents, most of which were created by Mr. Banks and none of which rise to the level of discrimination, retaliation or hostile work environment. And the fact, in concluding, the fact that we do not hear from Mr. Banks on a motion for summary judgment which lays all of these factors out so he could say, I dispute this, or that he has even a scintilla of evidence to support his accusations is most telling. Their papers violate Rule 56E. There's no evidentiary content and the district judge got it right. She got it right from top to bottom. She kept saying, where's the evidence? What are you relying upon? How are you disputing what the appellees said? And each of the appellees submitted affidavits based upon their own personal knowledge of events. If there are no other questions, I'll sit down. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honor. Your Honor, you hit the nail right on the head. In terms of retaliation and discrimination, but I'll start with retaliation, there is absolutely temporal proximity. What is that temporal proximity? Banks has called the N-word. Banks complains about it repeatedly, verbally as well, not just in writing. How do we know that? There's no Rule 56 affidavit from your client. Well, we state why, Your Honor. We state that, first of all, he did testify to all of these. The reason that he did testify to all this, we have his deposition testimony. There are sole reasons why that wasn't put in, because there is no stronger evidence of unlawful misconduct than defendants' own admissions. They can't claim that somehow Carlucci did not state that, quote, poor performance didn't end Banks's employment. The district court didn't cite to any of that. The defendants aren't citing to any of that. This is vital information. We have Carlucci, the owner and decision-maker, stating repeatedly, none of these perverted performance reasons were why he was fired, none of them. But what we also have is, going back to temporal proximity, Your Honors, we have the write-up, right? So many more things happened between the time of the attorney letter complaining, Banks's further complaints, right? We have the insubordination write-up done by Carlucci. It is devoid of anything showing that he's insubordinate in any way. And then when asked and pressed, he said he can't recall anything that Banks did that was purportedly insubordinate. That's in December. Then we have Carlucci stating that somehow there's a physical altercation. They just say it again, that he's dangerous. This is entirely contradicted by Carlucci saying Banks wasn't dangerous at all, Robinson was the same way, and nothing that happened, including the claimed diabetic P comment, nothing that happened on January 30th caused the firing or the suspension. This is pretext. This is bookcase pretext. And the district court erred in not reflecting the record because they don't mention it anywhere. And it shows temporal proximity calling a black man suddenly dangerous when both of the people are shown to be exactly the same misconduct and only the black person is called dangerous has been shown by courts to be signs of discriminatory animus. So we also have, Your Honor, discriminatory animus that's right up to the firing period. There is absolute, Your Honor, hit it on the head, with respect to temporal proximity and respect to pretext. For the court to say it's unrebutted absolutely does not reflect the evidentiary record whatsoever, and that requires vacating the court's order. Thank you. Thank you both for taking the case under advisement.